IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ROAD WIDENER, LLC,

                              Plaintiff,

                v.                              Civil Action No.
                                                1:20-CV-0160 (DNH/TWD)

ROBERT H. FINKE & SONS, INC.,

                              Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

FOR PLAINTIFF:

REIHART BOENER VAN DEUREN          MONICA MARK, ESQ.
22 East Mifflin St., Suite 700     PAUL J. STOCKHAUSEN, ESQ.
Madison, WI 53703                  DAVID G. HANSON, ESQ.
                                   JESSICA H. POLAKOWSKI, ESQ.

HODGSON, RUSS LAW FIRM             CHRISTIAN J. SOLLER, ESQ.
677 Broadway, Suite 301
Albany, NY 12207

FOR DEFENDANT:

LEASON ELLIS LLP                   CAMERON S. REUBER, ESQ.
One Barker Ave., 5th Floor         LORI LEIGH COOPER, ESQ.
White Plains, NY 10601             ROBERT M. ISACKSON, ESQ.
                                   SAFET METJAHIC, ESQ.


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

This is a patent infringement action between Road Widener, LLC ("Road Widener" or "plaintiff") and Robert H. Finke & Sons, Inc. ("Finke & Sons" or "defendant"), two companies engaged in the marketing of equipment used in the road construction industry. At issue is a patent describing a flexible skid steer attachment device designed for use in paving shoulders and widening roads. Road Widener contends that Finke & Sons infringes the subject patent by importing, offering for sale, and selling a product manufactured by an off-shore company.

Currently before me on referral for the issuance of report and recommendation, pursuant to 28 U.S.C. § 636(b), are (1) Road Widener's motion to strike portions of Finke & Sons' revised non-infringement contentions, and (2) Finke & Sons' motion for judgment on the pleadings. Based upon the parties' written submissions and oral argument conducted in this matter, I recommend that Road Widener's motion to strike be granted, and that Finke & Sons' motion for judgment on the pleadings be denied.

I.    BACKGROUND

The infringement claims asserted in this action stem from United States Reissued Patent No. U.S. RE46,971 (the "'971 Patent"), which is

2

entitled "FLEXIBLE SKID STEER ATTACHMENT DEVICE" and was reissued on July 31, 2018, to Inventor Duane A. Neumann of Jefferson, Wisconsin, and has been assigned to Road Widener.[1]  Dkt. No. 1, at 2; Dkt. No. 1-1, at 2.  The ′971 Patent traces its roots to an earlier patent, U.S. Patent No. 8,322,947, issued on December 4, 2012.  *Id.*  Road Widener practices the ′971 Patent through various products designed to "attach to a skid steer and function to widen roads through the addition of a shoulder more efficiently and cost-effectively than traditional road wideners."  Dkt. No. 1, at 3.

The ′971 Patent represents an improvement over U.S. Patent No. 7,540,687 (the "′687 Patent"), also issued to Inventor Neumann, which discloses a similar device that "has enjoyed an extensive market presence."  ′971 Patent, 1:62-65, 2:24-27.  The ′971 Patent was designed to overcome a misalignment problem prevalent in the ′687 Patent, whereby the conveyer belt system "would become misaligned due to the pressure from debris coming in contact with the belt over time, as well as from the motion of the vehicle," requiring the belt be repositioned.  ′971 Patent, 1:66-2:5.  This issue is addressed in the ′971 Patent by designing the skid steer

---

[1]    The ′971 Patent appears at several locations in the record including, *inter alia*, as Exhibit A to plaintiff's complaint.  *See* Dkt. No. 1-1.

attachment in a way that affords the operator more control over the placement of debris.  '971 Patent, 2:21-24.

The '971 Patent invention, which is a relatively simple mechanical device, is described as follows:

> The present invention is comprised of improved support components, an improved hopper design that optimizes the angle of deflection for debris, design dimensions and reduced sized rollers that eliminate the need for disassembly of the device for transport, a hopper deflection component, and a shortened flap design.  Additionally, two tandem casters are used to more equally distribute the weight of the apparatus reducing the number of casters needed.

'971 Patent, 2:27-35.  A representative embodiment of the invention disclosed in the '971 Patent specification is shown below:



'971 Patent, Amended Figure 1.  Amended Figure 1 depicts an exemplary embodiment of a flexible skid steer road widening and shoulder attachment device **100** attached to a skid steer **200**.

The '971 Patent includes three independent claims: Claim 1, Claim 10, and Claim 15.  Claim 1 involves

> A [highly resilient] skid steer attachment for a skid steer comprised of:
>
> a support frame [supported by at least two support brackets] *having a first end, a second end, a first side, and a second side opposite said first side*;
>
> a hopper having [four] *a plurality of* angled walls for receiving debris at an angle of deflection which minimizes the impact of debris on a conveyer belt;
>
> wherein one of said [four] angled walls is vertical relative to a horizontal plane;
>
> wherein [three] *a plurality* of said [four] angled walls further include a vertical deflection component *oriented vertically* for directing debris downward;
>
> a conveyer system comprised of a conveyer belt and a pulley, said pulley being at least two inches wider than said conveyer belt;
>
> at least one [hydraulic] *power* system for powering said conveyer system;
>
> a spreader system;
>
> a plurality of tandem casters rotatably attached at [a] *said* first end of said support frame, [said plurality of tandem casters comprised of steel polyurethane plastic];

at least one contact roller rotatably attached to said first end of said support frame; and

a universal mounting plate attached at **[a]** *said* second end of the support frame in a manner that allows said mounting plate to be engaged by a skid steer.

'971 Patent, 5:17-43.

Claim 10 describes

A skid steer attachment device comprising:

a support frame;

a hopper with a plurality of angled walls, wherein at least one of said plurality of angled walls is vertical relative to a horizontal plane, and *wherein at least one of said plurality of angled walls* further includes a vertical deflection component configured to direct debris *vertically* downward;

a conveyer system including a conveyer belt **[**and at least one pulley wherein the at least one pulley is wider than said conveyer belt**]**;

*a pulley that is at least 2 inches wider than the conveyer belt and is configured to prevent the conveyer belt from moving off an edge of the pulley*;

at least one system for powering said conveyer system;

a spreader system comprising a first wall extending at a first angle from the support frame and a second wall extending at a second angle from the first wall;

a plurality of tandem casters rotatably attached at a first end of said support frame;

at least one contact roller rotatably attached to said first end of said support frame configured for engagement with at least one rear wheel of a vehicle; and

a universal mounting plate attached at a second end of the support frame configured for attachment to a skid steer.

'971 Patent, 6:4-28.

Lastly, Claim 15 discloses

*A highly resilient skid steer attachment for a skid steer comprised of:*

*a support frame supported by at least two support brackets;*

*a hopper having four angled walls for receiving debris at an angle of deflection which minimizes the impact of debris on a conveyer belt;*

*wherein at least one of said four angled walls is vertical relative to a horizontal plane;*

*wherein at least two of said four angled walls further include a vertical deflection component vertically oriented for directing debris downward;*

*a conveyer system comprised of a conveyer belt and a pulley, said pulley being at least two inches wider than said conveyer belt;*

*at least one hydraulic system for powering said conveyer system;*

*a spreader system comprising a first wall extending at a first angle from the support frame and a second wall extending at a second angle from the first wall;*

> *a plurality of casters rotatably attached at a first end of said support frame;*
>
> *at least one contact roller rotatably attached to said first end of said support frame configured for engagement with at least one rear wheel of a vehicle; and a universal mounting plate attached to a second end of the support frame in a manner that allows said mounting plate to be engaged by a skid steer.*

'971 Patent, 6:43-67, 7:1-3.[2]

## II.  PROCEDURAL HISTORY

This action was commenced on February 18, 2020.  Dkt. No. 1.  In its complaint, Road Widener alleges that Finke & Sons has infringed at least Claims 1, 10, and 15 of the '971 Patent by offering to sell, selling, and/or importing into the United States skid steer attachments under the brand name ShoulderMaster, and specifically the model ShoulderMaster 2100 ("SM2100"), a product developed by Stabilicorp Pty Ltd., an Australian road construction company.  *Id.* at 7-10.  Finke & Sons has since answered Road Widener's complaint, generally denying its material allegations, asserting various affirmative defenses including, *inter alia*, non-infringement, patent invalidity, prosecution history estoppel, and inequitable

---

[2]    According to the '971 Patent, matter printed in italics represents additions made by the reissue, whereas bracketed excerpts constitute material deleted from the original patent.  '971 Patent, 1:5-8.

conduct, and additionally interposing counterclaims seeking declarations of non-infringement and patent invalidity.

After engaging in claim construction proceedings as directed by N.D.N.Y. L. Pat. R. 4, I issued a report and recommendation regarding the construction of the disputed terms "vertical deflection component," "oriented vertically," "vertically downward," "vertically oriented," "pulley," "horizontal plane," "vertical," "angled walls," and "angle of deflection."  Dkt. No. 48. United States District Judge David N. Hurd adopted that report and recommendation, modifying it only to correct two inadvertent errors.  Dkt. No. 53.

Following issuance of the claim construction decision and a telephone conference held by Magistrate Judge Therese Wiley Dancks, the parties filed a joint request to amend the scheduling order governing the progression of this case, which included deadlines for the exchange of revised infringement and non-infringement contentions.  Dkt. No. 55. Judge Dancks granted this request, ordering that Road Widener's revised infringement contentions be disclosed by August 6, 2021, and Finke & Sons' revised non-infringement contentions be served on or before August 27, 2021.  Dkt. No. 56.

On September 10, 2021, Road Widener filed an emergency motion seeking a temporary restraining order with an underlying motion to strike positions that were newly raised in Finke & Sons' revised non-infringement contentions.  Dkt. No. 58.  Judge Hurd denied the application for a temporary restraining order, and directed Finke & Sons to respond to the motion to strike pursuant to the ordinary motion practice outlined in this court's local rules.  Dkt. No. 59.  On October 1, 2021, Finke & Sons filed a motion for judgment on the pleadings based on the court's construction of the term "pulley" found during claim construction proceedings, arguing that, based on that construction, the SM2100 does not infringe upon the '971 Patent claims as a matter of law.  Dkt. No. 62.

The two pending motions have been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b).  Dkt. No. 65.  Oral argument was conducted with respect to those motions on November 3, 2021.  At the conclusion of oral argument, I reserved decision and indicated that I would provide a written report and recommendation to Judge Hurd regarding both of those motions.

III.    DISCUSSION

  A.    Road Widener's Motion to Strike Portions of Finke & Sons'
        Revised Non-Infringement Contentions

  In its motion to strike, Road Widener principally argues that four of

the contentions raised in Finke & Sons' revised non-infringement

contentions should be stricken as improper because they do not stem from

the previous claim construction findings, but rather constitute entirely new

contentions based on claim terms that have not been construed, and which

defendant previously explicitly did not dispute.  Dkt. No. 58-1.  The four

specific new contentions that Road Widener challenges allege that (1) the

SM2100 does not include "a hopper having a plurality of angled walls for

receiving debris at an angle of deflection which minimizes the impact of

debris on a conveyer belt" because the walls of the SM 2100 do not

"minimize" such impact, (2) the SM2100 does not include "a support frame

supported by at least two support brackets," (3) the SM2100 does not

include a "power system," "system," or "hydraulic system" for powering the

conveyer system, and (4) the SM2100 does not include "at least one

contact roller rotatably attached" to the support frame.  Dkt. No. 58-1, at 7-

9.

As an initial matter, the parties dispute whether the text order issued by Judge Dancks adopting the parties' agreement regarding amendment to the scheduling order, and allowed for the filing of revised contentions, permitted the parties to amend their contentions solely to account for the findings resulting from the claim construction proceedings – as argued by Road Widener – or instead allowed the parties to freely amend their contentions in any way desired – as argued by Finke & Sons.  Based upon consideration of the court's local patent rules and the chronology associated with the case, I recommend a finding that, under the circumstances of this case, the order permitting the filing of revised contentions should be interpreted only as allowing revisions based on the claim construction findings.

N.D.N.Y. Local Pat. R. 3.6(a) provides that amendments to a party's infringement contentions or non-infringement contentions "may be made by order of the Court, upon a timely application and showing of good cause, following the procedures required under Local Rule 7.1(b)(2) for applying to an assigned magistrate judge for non-dispositive relief."  Local Pat. R. 3.6(a).  Among the listed non-exhaustive examples of circumstances that may support a finding of good cause, two are relevant to this matter, including where (1) there has been "a claim construction by the Court

12

different from that proposed by the party seeking amendment," or (2) there has been "recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions." *Id.* In addition to meeting one of these criteria, there must also be a showing that the circumstances that constitute good cause do not result in "undue prejudice" to the adverse party. *Id.*

Local Pat. Rule 3.6 therefore explicitly acknowledges that a claim construction by the court can constitute good cause to permit amendment. As a result, it is clear that there was good cause at the time Judge Dancks issued her order to permit amendments related to the claim construction findings that were different that the construction proposed by the respective parties, and any such amendments made in Finke & Sons' revised non-infringement contentions related to the claim construction findings were properly allowed under that order.

With the exception of the contention related to the term "minimize," however, Finke & Sons acknowledged at oral argument that the other new contentions challenged by Road Widener are based not on the court's claim construction findings, but rather on new information discovered during its expert's inspection of an SM2100 device in August 2021.

13

Because that inspection occurred *after* the issuance of Judge Dancks'
order permitting the exchange of revised contentions, any new information
gleaned from that inspection could not have given rise to a finding of good
cause to support the order.  Consequently, because such an order can only
issue upon a finding of good cause, Finke & Sons' contentions based on
the new evidence cannot be considered to fall within the scope of that
order, whether or not there was any explicit limitation on the scope of
amendment specified in the order; the limitation on the scope is imposed by
the good cause requirement inherent in such an order by virtue of Local
Pat. R. 3.6.

Because the basis for the challenged new contentions did not arise
until after the issuance of Judge Dancks' order, it must be determined
whether there is separate good cause to allow Finke & Sons to include
these new contentions at this point, notwithstanding that good cause did
not exist related to them at the time of that order.  The evidence presented
does not suggest that it does.  "Good cause requires a showing of
diligence."  *O2 Micro Int'l Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355,
1366 (Fed. Cir. 2006); *CellCast Technologies, LLC v. United States, 15*2
Fed.Cl. 414, 430-31 (Ct. Fed. Cl. 2021) ("Discovery and pre-trial
proceedings are a fact-finding process for parties to discover new

14

information, and therefore courts allow parties to supplement their
contentions upon a showing of good cause and no undue prejudice to the
other side, with new information as the case progresses.") (citing *O2 Micro
Int'l.*, 467 F.3d at 1366).  "The burden is on the movant [seeking
amendment] to establish diligence rather than on the opposing party to
establish a lack of diligence."  *O2 Micro*, 467 F.3d 1355, 1366 (Fed. Cir.
2006).

Finke & Sons argues that it was diligent because (1) it disclosed its
revised non-infringement contentions within a few days of when the
inspection occurred, and (2) as the distributor – not the manufacturer – of
the SM2100, it was not overly familiar with and did not have immediate
access to an SM2100[3] such that it would have discovered the aspects of
the machine identified by the expert earlier.  Dkt. No. 61, at 13.  When
questioned at oral argument regarding why it did not have either an expert
or someone else inspect the SM2100 until August 2021, despite the fact
that this litigation was initiated in February 2020, Finke & Sons' counsel
stated that it would have been useless to have someone from Finke & Sons
inspect the machine because it lacked the expertise necessary, and also

---

[3]      Finke & Sons indicated in its memorandum and at the oral argument that only
five SM2100 units have been imported into the country at this point.

stated that the choice not to retain an expert at that time was made because, from the standpoint of being conservative regarding incurring legal expenses, it was deemed to be more prudent to wait until there was more of an indication regarding the nature and validity of Road Widener's claims of infringement.

Although Finke & Sons' concerns about legal fees in a patent case are understandable, they do not constitute a sufficient reason for failing to exercise diligence to develop its defense to Road Widener's claim.  Finke & Sons has been squarely on notice of the nature and basis for Road Widener's claims of infringement since February 2020 based on the filing of the complaint, and yet it took no action to inspect an SM2100 device either following the filing of the complaint, or, more specifically, between the time Road Widener's infringement contentions were due on June 19, 2020, and when its own non-infringement contentions were due on July 20, 2020, despite the fact that, at that point, Finke & Sons had the benefit of the additional information regarding the specific nature of Road Widener's infringement claims as illuminated by the infringement contentions.  Indeed, if, as Finke & Sons states, it was able to disclose revised contentions based on the expert's inspection within two days after that inspection occurred, it would not have been unreasonable for Finke & Sons to conduct

an inspection in the span of a month between when Road Widener served

its infringement contentions and when Finke & Sons' non-infringement

contentions were due.  Given that the infringement contentions represented

Road Widener's stance regarding the specific ways in which the SM2100

allegedly infringes the '971 patent, Finke & Sons' rationale that it was more

prudent to wait to obtain an expert to inspect the SM2100 to discover the

specifics of the device fails to hold water.  I therefore recommend a finding

that Finke & Sons has failed to establish good cause for allowing any of the

proffered amendments that were based on information learned during the

expert's inspection of the SM2100.

Further, although no finding related to the existence of undue

prejudice is required where there has been no showing of good cause, I

note that Road Widener has shown the existence of at least some

modicum of prejudice in this instance.  *See O2 Micro Int'l,* 467 F.3d at 1368

(finding no need to consider the question of prejudice where the court

already found that plaintiff had not acted diligently).  Even if the deadlines

governing the progression of the case are stayed and extended, the parties

have already expended a significant amount of time and resources on this

litigation up to this point, including related to claim construction

proceedings.  As Road Widener argues, accepting Finke & Sons' new

17

contentions would very likely require additional claim constructions before the issues related to infringement can be litigated, resulting in additional time and expense for both parties.

This case is notably similar in this respect to *Kruse Tech. Partnership v. Volkswagen AG*, 544 F. App'x 943 (Fed. Cir. 2013), in which the Federal Circuit found that the district court had not abused its discretion when finding that amendment of infringement contentions would result in prejudice due to the fact that the proceedings were nearing the end of fact discovery by the time of the request for amendment, even though defendant had yet to take fact depositions and the parties had not yet exchanged expert reports. *Kruse*, 544 F. App'x at 952-53. It found that prejudice resulted from the fact that the change of theory contained in the proposed amendments would have required the reopening of *Markman*[4] proceedings and extending discovery. *Kruse*, 544 F. App'x at 953-54.

As the Federal Circuit noted in *Kruse*, local patent rules are meant to strike a balance between "the right to develop new information in discovery" and "the need for certainty as to legal theories," and they require that the parties "crystallize their theories of the case early in litigation so as to

---

[4]     *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996).

prevent the 'shifting sands' approach to claim construction." *Kruse*, 544 F. App'x at 953.   In this case, Finke & Sons is attempting not only to assert new theories of non-infringement that it had not previously asserted, but to assert theories as to issues that it previously indicated were not in dispute. Such an abrupt reversal of legal position as the parties are approaching the end of discovery is perhaps more indicative of prejudice than the situation in *Kruse*, and certainly is not consistent with the spirit of the local patent rules.

Having concluded that Road Widener's motion should be granted as to the revised non-infringement contentions that are not based on the court's claim construction findings, the last matter to attend to is determining whether Finke & Sons' revised contention related to whether the SM2100 has angled walls which "minimize" the impact of debris on the conveyer belt is sufficiently based in the claim construction findings to be covered by Judge Dancks' order.

Finke & Sons argues specifically that the court's construction of the terms "angled walls" and "angle of deflection" inform its new contention regarding the term "minimize" because all of those terms appear within the same portion of the relevant claims and are all "so closely related that the claim construction order can reasonably be said to have effected elements

1b and 15b such that any amendment to the non-infringement contentions with respect to these elements . . . satisfy Plaintiff's . . . argument that they must be related to the Court's claim construction to be permitted."  Dkt. No. 61, at 16.

Notably, unlike the other three challenged contentions, Finke & Sons argues that this revised contention is based on the claim construction findings and not on the expert's examination of the SM2100.  I recommend finding that the new contention based on "minimize" does not actually fall under the criteria in Local Pat. R. 3.6(a), and thus is not covered within the scope of the good cause underlying Judge Dancks' order.  As was discussed previously, Local Pat. R. 3.6(a)(a) provides that circumstances constituting good cause can include where the court adopts a claim construction "different from that proposed by the party seeking amendment."  Local Pat. R. 3.6(a)(1).

That is simply not the case in this instance.  The relevant element of the patent claims cited involve a hopper having either four or a plurality of "angled walls for receiving debris at an angle of deflection which minimizes the impact of debris on a conveyer belt."  '971 Patent, 5:22-24, 6:47-49. During claim construction, the term "angled walls" was noted not to require construction in light of the parties' agreement, while "angle of deflection"

was construed as "the angle between the vector of debris being received in the hopper and the surface of the angled wall being impacted by the debris," which was also based on an agreement by the parties.  Dkt. No. 48, at 12 n.5; Dkt. No. 53, at 3-4.

Indeed, in their joint claim construction and prehearing statement, filed on September 18, 2020, the parties indicated that they were in agreement that the term "angle of deflection" should be defined in the way that was ultimately adopted.  Dkt. No. 32, at 1.  Moreover, although the parties had initially disputed what the term "angled wall" meant, they later agreed in their memoranda exchanged during the claim construction proceedings that no construction of that term was necessary because it was subject to its plain and ordinary meaning.  Dkt. No. 38, at 24-27; Dkt. No. 41, at 28.

The claim construction proceedings therefore did not result in the adoption of a construction of any of the relevant terms that was different from that proposed by Finke & Sons; the parties *agreed* on the construction of both "angled walls" and "angle of deflection" during the course of the briefing for those proceedings, and the term "minimize" was not construed at all or even raised by either party as a controverted term requiring

construction.[5]  Because the ultimate construction of those terms was

identical to the constructions agreed to by Finke & Sons, none of those

terms provide a good cause basis for amendment falling under Local Pat.

R. 3.6(a)(1).[6]

Moreover, there is a serious question as to whether Finke & Sons'

actions in waiting until July 2021 to seek to revise its contention based on

the term "minimize" constituted due diligence.  Both parties were on notice

of the constructions of the relevant terms by September 18, 2020 – as to

"angle of deflection" – and December 11, 2020 – as to "angled walls" – well

before either the report and recommendation regarding claim construction

or the order adopting it in May and June 2021, respectively.  Given that

Finke & Sons was aware of what these terms both meant by December

2020, it does not appear that it acted diligently when it failed to move to

---

[5]     Not only was "minimize" not construed or raised as a term in need of construction during the *Markman* proceedings, Finke & Sons' assertion that the constructions of the terms "angled walls" and "angle of deflection" alters the meaning of the term "minimize" is not supported by a reading of the ′971 Patent and the actual constructions of those two terms that were adopted.

[6]     The narrow exception to this is, of course, to the extent that the construction ultimately agreed upon and adopted was different from what was asserted in the parties' respective contentions, given that their contentions were filed before the filing of both their joint claim construction and prehearing statement and the briefing leading up to the *Markman* hearing where the relevant agreements were made.  However, that narrow exception would not allow the revisions Finke & Sons wishes to make here related to the "minimize" clause.

amend its non-infringement contentions at any point between December 2020 and when the *Markman* hearing was held in April 2021 if it has reason to believe, as it now asserts, these constructions impact the meaning of "minimize" in the same element.

Because Finke & Sons' argument is not based on any claim construction adopted by the court that was different than what it proposed during claim construction proceedings, and not based upon the recent discovery of information not previously discovered despite due diligence, I recommend a finding that Finke & Sons' new contention related to "minimize" does not meet the criteria for good cause under Local Pat. R. 3.6(a) and is not covered under the basis for good cause that underlies Judge Dancks' order, or, in the alternative, was not the product of due diligence by defendant. The "minimize" contention would also be barred based on the undue prejudice resulting from the need to conduct further claim construction proceedings if that contention were to be accepted, as was already discussed above.

Based on the foregoing, I recommend that Road Widener's motion to strike the four challenged contentions be granted, and Finke & Sons' arguments to the contrary be rejected.

B.    Finke & Sons' Motion for Judgment on the Pleadings

In its motion, Finke & Sons seeks judgment on the pleadings

dismissing plaintiff's complaint.  In support of that motion, Finke & Sons

argues that the court's construction of the term "pulley" undermines Road

Widener's infringement claims because the SM2100 does not incorporate a

pulley, as that term has been defined, and thus Road Widener cannot

plausibly allege that the SM2100 literally infringes the '971 Patent.  Dkt. No.

62-1, at 12-16.  Finke & Sons further argues that Road Widener cannot

allege a plausible claim of infringement under the doctrine of equivalents

because the patent discloses but does not claim a system used in place of

a pulley in the SM2100, and therefore Road Widener's reliance on the

doctrine of equivalents would be barred by the disclosure-dedication

doctrine.  Dkt. No. 62-1, at 16-17.

On a motion for judgment on the pleadings, the court must accept all

factual allegations set forth in a complaint as true, construe the complaint

liberally, and draw all reasonable inferences in the plaintiff's favor.  *Hayden

v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  To survive such a motion,

the complaint "must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

24

U.S. 662, 679 (2009).  "In evaluating a motion under Rule 12(c), the Court

may only consider the complaint itself and documents that are attached to

it, incorporated by reference, or on which the complaint heavily relies."

*Seoul Viosys Co., Ltd. v. P3 Int'l Co.*, 2017 WL 6942744, at *2 (S.D.N.Y.

Sept. 22, 2017) (citing *In re Thelen LLP*, 736 F.3d 213, 219 [2d Cir. 2013]).

However, the submission of "matters outside the pleadings [that] are

presented to and not excluded by the court" require that the motion "be

treated as one for summary judgment under Rule 56" and "[a]ll parties must

be given a reasonable opportunity to present all the material that is

pertinent to that motion."  Fed. R. Civ. P. 12(d).

### 1.   Consideration of Extrinsic Photographs

As a threshold matter, the parties disagree as to whether it is proper

for the court to consider photographs of the SM2100 submitted by Finke &

Sons with its motion, but not included in the parties' pleadings.  Specifically,

the parties disagree as to whether the Federal Circuit's decision in

*Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927 (Fed. Cir. 2014), which

would appear to permit consideration of photographs of a patented item,

applies solely to design patents, or whether it applies to all patents, given

that infringement of a utility patent also requires comparing the subject

claimed by the patent with the specifics of the allegedly infringing device.

25

In *Anderson*, the Federal Circuit found that extrinsic photographs of the allegedly infringing product, although extrinsic in nature, were central to the complaint of infringement because "[d]etermining infringement of a design patent requires comparing the drawings of the patented design to the appearance of the accused products, and the photographs are visual representations of those products," particularly given that the authenticity of those photographs were not in question.  *Anderson*, 570 F. App'x at 932.

Turning to the photographs at issue, I conclude that I need not make a conclusive determination as to whether *Anderson* might apply to utility patents – irrespective of whether the photographs provided by defendant are considered[7] – in light of my recommendation that Finke & Sons' motion be denied due to the standard applicable on a motion for judgment on the pleadings and the presence of issues of fact that would be more appropriately resolved either on a properly timed motion for summary

---

[7]     To the extent that the disputed photographs would not be appropriately considered without conversion to a motion for summary judgment, I recommend against conversion at this early juncture.  *Cf.* Fed. R. Civ. P. 56(d) (allowing the court to defer considering a motion for summary judgment or permitting time to obtain discovery if, for specified reasons, the nonmovant is unable to present facts essential to justify its opposition).  I note that decision not to convert the motion for judgment on the pleadings into one for summary judgment in no way precludes the filing of a motion for summary judgment after appropriate discovery – particularly as to expert testimony – has been conducted.

judgment, after the parties have been afforded a fair opportunity for

discovery and retention and depositions of experts, or at trial.

        2.   Literal Infringement

Addressing first the issue of literal infringement, I note that Finke &

Sons has not elaborated on its contention that Road Widener's complaint is

deficient as a matter of law.  Specifically, as relevant to the motion, Road

Widener's complaint alleges that the SM2100 has a "conveyer belt with a

pulley that is at least two inches wider than the belt, with the pulley

including metal teeth at the end to facilitate a chain drive"; it otherwise

makes no allegations regarding the specifics of the pulley in the SM2100.

Road Widener's complaint does include pictures, but none of them so

obviously undermine its allegation that a "pulley" as construed[8] is present

such that its claim would be implausible.  Rather, drawing all reasonable

inferences in favor of Road Widener, in the absence of any evidence

regarding whether a person of ordinary skill in the art would consider the

structure in the SM2100 to be a "pulley" meeting that construction, there

---

[8]     "Pulley" has been defined as a "roller having a cylindrical shape and structure which is fixed on a shaft and permits the application or transmission of power to a belt." Dkt. No. 48, at 37; Dkt. No. 53, at 3.

remains an issue of fact that cannot be resolved on a motion for judgment on the pleadings.

This finding would not change even if the photographs submitted with Finke & Sons' motion were to be considered. Although those photographs arguably provide a clearer indication of what the relevant mechanism in the SM2100 looks like and how it is structured, they still do not provide sufficient information from which I could conclude as a matter of law that the SM2100 does not contain a pulley, given that those photographs do not clearly establish whether a person of ordinary skill in the art would conclude that the relevant component in the SM2100 could constitute a pulley as defined by the court. As was already discussed, there is yet no evidence from an expert or otherwise on the issue of whether, from the perspective of a person of ordinary skill in the art, the SM2100's conveyer apparatus could be considered to include a pulley, and, given the nature and complexity of the device, there is both insufficient information and disputed issues of fact which prevent the court from being able to render a finding as a matter of law at this time.

I note that, moreover, as Road Widener observed during the hearing, those extrinsic photographs, even if an accurate representation of what they show, do not provide a view of the entire conveyer apparatus, but

instead only selective views, and Road Widener has not yet had sufficient fair opportunity to adduce and provide its own evidence to controvert Finke & Sons' photographs.

Based on the foregoing, I recommend that Finke & Sons' arguments seeking judgment on the pleadings as to Road Widener's claim of literal infringement be rejected.

### 3. Infringement Based on the Doctrine of Equivalents

Turning to the doctrine of equivalents and the disclosure-dedication doctrine, Finke & Sons argues that Road Widener's disclosure of a "chain conveyer" in the specification of the '971 Patent constitutes a disclosure of the system employed in the SM2100, which Road Widener specifically does not claim. Dkt. No. 62-1, at 16-17. Specifically, Finke & Sons argues that "[a] [person of ordinary skill in the art] would immediately recognize the chain conveyer system of the SM2100" and "would similarly know and understand a chain drive to be an alternative to the disclosed *and claimed* pulley conveyor system." *Id.* (emphasis in original).

The disclosure-dedication doctrine, which can bar application of the doctrine of equivalents, applies "when a patent drafter discloses but declines to claim subject matter" because such failure to claim "dedicates

the unclaimed subject matter to the public." *Eagle Pharmaceuticals Inc. v. Slayback Pharma LLC*, 958 F.3d 1171, 1175 (Fed. Cir. 2020). "To determine whether the disclosure-dedication doctrine applies in a given case, we ask whether the specification discloses unclaimed subject matter with 'such specificity that one of ordinary skill in the art could identify the subject matter that had been disclosed and not claimed.'" *Eagle Pharmaceuticals*, 958 F.3d at 1175 (quoting *PSC Computer Prods., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1360 (Fed. Cir. 2004)). "[T]he disclosure-dedication doctrine requires only that the specification disclose the unclaimed matter 'as an alternative to the relevant claim limitation.'" *Eagle Pharmaceuticals*, 958 F.3d at 1175 (quoting *Pfizer, Inc. v. Teva Pharm. USA, Inc.*, 429 F.3d 1364, 1378 (Fed. Cir. 2005)).

In the '971 patent, it is recited that, in one claimed embodiment, the "conveyer belt further includes a pulley that is at least 2 inches wider than conveyer belt to prevent conveyer belt from moving off the edge of the pulley." '971 Patent, 3:42-45. The patent makes clear that the "conveyer system" claimed by the patent includes both (a) a conveyer belt and (b) a pulley.

In the patent specification, it is further noted that

"[i]n other embodiments, conveyer system [which in the embodiment shown is comprised of a conveyer belt and a plurality of rollers that are horizontally aligned beneath the lower opening of the hopper] may be replaced by another means for moving debris from hopper out toward spreader system. For example, chains may be used to displace debris from hopper. Conveyer belt may be any functionally equivalent apparatus known in the art including, but not limited to a chain conveyer, screw conveyer, and any pneumatic, flexible, and vibrating system."

'971 Patent, 3:49-55.

As was already discussed, Finke & Sons argues that this disclosure of a "chain conveyer" is sufficient to disclose the system used in the SM2100 such that the disclosure-dedication doctrine applies.

Contrary to Finke & Sons' confident, but conclusory, assertions, there is no definitive indication at this stage as to whether a person of ordinary skill in the art would indeed consider the system in the SM2100 to be a "chain conveyer" as disclosed by the '971 Patent.  Although the application of the disclosure-dedication doctrine is a question of law, and "[e]xpert testimony is not always required for a district court to determine" whether the doctrine applies, there is a dearth of information appropriate for a motion for judgment on the pleadings from which a court could determine

what a chain conveyer is,[9] much less whether a person of ordinary skill in the art would classify the system used in the SM2100 as a "chain conveyor" as disclosed by the patent specification. *Eagle Pharmaceuticals,* 958 F.3d at 1177.

Although Finke & Sons relies heavily on *Eagle Pharmaceuticals* and *PSC Computer Products* to support its argument that it is entitled to judgment on the pleadings as to the disclosure-dedication doctrine, those cases are distinguishable. In *Eagle Pharmaceuticals*, the Federal Circuit found that the disclosure-dedication bar applied where the patent specification expressly and repeatedly identified – but did not claim – "ethanol" as an alternative "pharmaceutically acceptable fluid" to the claimed propylene glycol, where the allegedly infringing product used ethanol. *Eagle Pharmaceuticals,* 958 F.3d at 1176-77. In *PSC Computer Products*, the Federal Circuit found that the disclosure-dedication bar applied where the patent specification disclosed plastic clips as an

---

[9]    I note that Road Widener cites definitions of "chain conveyer" from various sources in its memorandum in opposition to Finke & Sons' motion. Dkt. No. 66, at 22-23. These extrinsic sources are not appropriately considered on this motion for judgment on the pleadings because the complaint does not refer to them or incorporate them by reference, and there is no indication Road Widener relied on any of these definitions or sources when drafting its complaint. *See In re Bausch & Lomb, Inc. Securities Litig.*, 2003 WL 23101782, at *16 (W.D.N.Y. Mar. 28, 2003) (finding that the court could not properly consider a dictionary definition on a motion to dismiss where that dictionary definition was not integral to the complaint and there was no indication that it met the requirements to allow the court to take judicial notice of it).

alternative to metal clips, but only claimed metal clips, and the allegedly infringing product used plastic clips. *PSC Computer Prods.*, 355 F.3d at 1354, 1358-60. In both of those cases, the alternative product or material disclosed but not claimed is fairly straight-forward and easily identifiable, even without evidence as to how a person of ordinary skill in the art would interpret the relevant language; it was not disputed that the accused products in those cases used ethanol and plastic clips, respectively. In this case, by contrast, even if a person of ordinary skill in the art could find that the inclusion of "chain conveyer" in the specification was sufficient as a disclosure to result in dedication of the use of chain conveyers to the public,[10] it is not clear at this stage that the system used in the SM2100 is, in fact, a "chain conveyer" as that term would be understood by a person of ordinary skill in the art. As a result, there exist issues of fact that make resolution of this question as a matter of law inappropriate at this time.

Based on the foregoing, I recommend that Finke & Sons' motion for judgment on the pleadings be denied.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

---

[10]    This fact is disputed by the parties and would itself likely require evidence, such as expert testimony, to resolve.

Based upon the parties' oral and written presentations, and the court having carefully considered the pleadings and all intrinsic evidence, including the patent itself, it is hereby respectfully

RECOMMENDED that Road Widener's motion to strike (Dkt. No. 58) be GRANTED as to Finke & Sons' challenged revised non-infringement contentions addressing (1) whether the SM2100 has angled walls for receiving debris at an angle of deflection which "minimizes" the impact of debris on a conveyer belt, (2) whether the SM2100 has a support frame "supported by at least two support brackets," (3) whether the SM2100 includes a "power system," "system," or "hydraulic system" for powering the conveyer system, and (4) whether the SM2100 includes at least one "contact roller rotatably attached" to the support frame; and that those portions of Finke & Sons' revised noninfringement contentions be STRICKEN; and it is further

RECOMMENDED that Finke & Sons' motion for judgment on the pleadings (Dkt. No. 62) be DENIED.

Dated:      December 9, 2021
            Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge